11th
Court of Appeals

                                                                  Eastland,
Texas

                                                             Memorandum
Opinion

 

In the
Interest of B.T., a child

No.  11-04-00077-CV --
Appeal from Taylor County

 

Brenda Borrego appeals from the trial court=s order terminating her parental rights
to her two- year-old daughter, B.T.  We
affirm.

The trial court found that Borrego (1) knowingly
placed or knowingly allowed the child to remain in conditions or surroundings
which endangered the physical or emotional well-being of the child and (2)
engaged in conduct or placed the child with persons who engaged in conduct
which endangered the physical or emotional well-being of the child.   Borrego brings two issues on appeal in which
she argues that the evidence is both legally and factually insufficient to
support the trial court=s
findings.[1]

A court may order involuntary termination of
parental rights only if the court finds (1) that a parent has committed a
predicate act or omission harmful to the child and (2) that termination is in
the best interest of the child.  TEX.
FAM. CODE ANN. ' 161.001
(Vernon 2002); In re B.L.D., 113 S.W.3d 340, 353-54 (Tex.2003).  The court must ensure that these findings are
made by clear and convincing evidence.  In
re B.L.D., supra.  Any complaint that
the evidence is legally or factually insufficient to support the findings
necessary for termination is analyzed by a heightened standard of appellate
review.  In re B.L.D., supra.








In a legal sufficiency review, we look at all the
evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its
finding was true.  In re J.F.C.,
96 S.W.3d 256, 266 (Tex.2002).  A
reviewing court must assume that the fact finder resolved disputed facts in
favor of its finding.  In re J.F.C.,
supra.  In a factual sufficiency
review, we must give due consideration to evidence that the fact finder could
reasonably have found to be clear and convincing.  In re C.H., 89 S.W.3d 17
(Tex.2002).  In reviewing the factual
sufficiency of the evidence, we determine whether the evidence is such that a
fact finder could reasonably form a firm belief or conviction about the truth
of the State=s
allegations.  In re C.H., supra.  We consider whether disputed evidence is such
that a reasonable fact finder could not have resolved that disputed evidence in
favor of its finding.  In re J.F.C.,
supra  at 266. 

B.T. was removed from Borrego on August 20, 2002,
when Borrego left her with a friend at a motel. 
Borrego=s friend
had to leave for work and left B.T. with another friend.  That friend was also unable to care for B.T.,
and the Department of Protective and Regulatory Services (DPRS) was called to
come for B.T.  B.T. was returned to
Borrego on February 12, 2003.  B.T. was
again removed from Borrego on March 31, 2003, after Borrego did not pick B.T.
up from day care.

Section 161.001(1)(E) allows for termination of
parental rights if the parent Aengaged
in conduct or knowingly placed the child with persons who engaged in conduct
which endangers the physical or emotional well-being of the child.@ 
Under subsection (E), the cause of the danger to the child must be the
parent=s conduct
alone, including the parent=s
actions or omissions or failures to act. 
In the Interest of S.H.A., 728 S.W.2d 73, 83‑84 (Tex.App. ‑
Dallas 1987, writ ref=d
n.r.e.).  Endanger means to expose to loss
or injury B to
jeopardize.  Texas Department of Human
Services v. Boyd, 727 S.W.2d 531, 533 (Tex.1987).  It is not necessary that the conduct be
directed at the child or that the child actually suffer injury.  Texas Department of Human Services v.
Boyd, supra.  The specific danger to
the child=s well‑being
need not be established as an independent proposition, but may instead be
inferred from parental misconduct.  In
the Interest of J.J., 911 S.W.2d 437, 440 (Tex.App. - Texarkana 1995, writ
den=d).








The record shows that Borrego has a pattern of
drug use.  While participating in
services provided by DPRS, Borrego tested positive for cocaine on December 2,
2002, for marihuana on December 13, 2002, and for methamphetamine on April 1,
2003, the day after failing to pick B.T. up from day care.  After B.T. was removed for the second time,
Borrego again tested positive for methamphetamine on September 17, 2003.  The record also shows that Borrego failed to
comply with numerous requests for drug testing. 
Charrisse Brown, a licensed chemical dependency counselor with
Prevention Strategies, testified that she believes Borrego is Ain denial of her drug problem.@ Brown further stated that, based upon
her counseling sessions with Borrego, she believes Borrego is a drug user and
that she will continue to use drugs.

The record further shows that Borrego has a
history of being involved in abusive and un-healthy relationships.  Borrego=s
daughter, Leslie,[2]
testified that Borrego had lived with four men, all of whom were abusive to
Borrego.  Further evidence was presented
that Borrego was involved in a relationship with the man who killed B.T.=s father.  Borrego was also involved with a man who had
a history with DPRS and who had had his parental rights terminated for
physically abusing his children. 

Borrego has a history of leaving the children
without adequate care and without providing contact information.  Leslie testified that Borrego would leave
Leslie and two of her other children[3]
with Randy Hamrick, who was not the father of the children.  Leslie said that Borrego would be gone for
one or two days and that they would not know Borrego=s
whereabouts.  Leslie said that Borrego
often left the children in Leslie=s
care.  Borrego would be gone overnight
while Leslie was left to care for the children. 
Leslie testified that many times she would not have any way to get in
contact with Borrego should an emergency arise. 
B.T. was removed from Borrego on two occasions:  (1) when 
Borrego left the child with someone who could no longer care for her
after Borrego failed to return and (2) when Borrego did not arrive to pick up
B.T. from day care.

Dr. Stephen M. Osborn testified that he conducted
a psychological evaluation of Borrego. Dr. Osborn diagnosed Borrego with
dysthymia, a type of depression, and with a personality disorder. Dr. Osborn
stated that the stress of caring for a child would increase the effects of
Borrego=s
personality disorder.  Dr. Osborn stated
that leaving children with others, being involved in abusive relationships, and
denying a drug abuse problem are consistent with Borrego=s
personality disorder. Darla Swanner, a licensed professional counselor,
testified that she has counseled  Borrego
and that she agrees with Dr. Osborn=s
evaluation.  Swanner stated that it is
not in B.T.=s or
Borrego=s best
interest for B.T. to live with Borrego. 








The record shows that Borrego has a pattern of
drug use, a history of abusive relationships, and a pattern of leaving her
children without adequate arrangements for their care.  We find that there is probative evidence to
support the trial court=s
finding that Borrego engaged in conduct or knowingly placed the child with
persons who engaged in conduct which endangered the physical or emotional
well-being of the child.  We additionally
find that the trial court could have reasonably formed a firm belief or
conviction about the truth of the State=s
allegation that Borrego engaged in conduct or knowingly placed the child with
persons who engaged in conduct  which
endangered the physical or emotional well-being of the child.  Borrego=s
second issue on appeal is overruled. 
Because we have concluded that there is both legally and factually
sufficient evidence to support the trial court=s
finding under Section 161.001(1)(E), we need not address Borrego=s first issue regarding the sufficiency
of the evidence to support the trial court=s
finding under Section 161.001(1)(D). 
Only one finding alleged under Section 161.001(1) is necessary for a
judgment of termination.  In re D.M.,
58 S.W.3d 801 (Tex.App. - Fort Worth 2001, no pet=n);
In re S.F., 32 S.W.3d 318, 320 (Tex.App. ‑ San Antonio 2000, no
pet=n); see also TEX.R.APP. P. 47.1.

The judgment of the trial court is affirmed.

 

JIM R. WRIGHT

JUSTICE

 

October 14, 2004

Not designated for publication. 
See TEX.R.APP.P. 47.2(a).

Panel
consists of:  Arnot, C.J., and

Wright,
J., and McCall, J.











[1]Borrego does not challenge the trial court=s finding that termination of the parent-child
relationship was in the best interest of the child.  TEX. FAM. CODE ANN. ' 161.001(2) (Vernon 2002).





[2]Leslie was 20 years old at the time of trial and did
not live with Borrego after B.T.=s birth.  





[3]Borrego has four daughters and one son.  Borrego=s son
resides in a treatment camp for sex offenders.    Borrego=s
parental rights have been terminated to one of her daughters, and she does not
have custody of another daughter.